Thomas C. HENDERSON, Petitioner,

v.

Gary JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.

Bradley Scott TAYLOR, Petitioner,

v.

Gary JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.

Civ. A. Nos.3:97–CV–2912–D, 3:97–CV–2074–D.

United States District Court,
N.D. Texas,
Dallas Division.

April 16, 1998.

Thomas C. Henderson, Huntsville, TX, pro se.

Bradley Scott Taylor, Dayton, TX, pro se.

Brian M. Middleton, George C. Gaskell, Assistant Attorneys General, Austin, TX, for Respondent.

FITZWATER, District Judge:

The question presented in these cases is whether the one-year period imposed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), for filing a habeas petition is a limitations period that is subject to equitable tolling or is instead a jurisdictional bar. Although the court holds that it is a statute of limitations, it also concludes that petitioners have failed to meet the high standard required to toll the period. The court therefore adopts the magistrate judges' recommendations that the petitions be dismissed as time-barred.

I

These are unrelated cases that the court has considered together to address the recurring assertion by habeas petitioners that they should be excused from the consequences of AEDPA's one-year time bar.

Petitioner Thomas C. Henderson ("Henderson") challenges his convictions by guilty plea on two charges of sexual assault. On June 1, 1990 the state court sentenced him to concurrent terms of imprisonment of 20 years. Henderson did not appeal his convictions and sentence. He later sought habeas relief in Texas state court. The Texas Court of Criminal Appeals denied the applications on August 17, 1995 and February 14, 1996. AEDPA took effect on April 24, 1996. Henderson signed the instant habeas petition on November 30, 1997, and the clerk of court filed it on December 2, 1997.

This court has held that the AEDPA one-year limitations period does not apply prior to its effective date of April 24, 1996, but does commence on that date. *See, e.g., Moraido v. Johnson,* Civil Action No. 3:97–CV–1868–D, order at 1 (N.D.Tex. Nov. 19, 1997) (Fitzwater, J.). With certain exceptions that do not apply in this case, *see* 28 U.S.C.

§ 2244(d)(1)(B)–(D), a petitioner whose conviction has become final, by the conclusion of direct review or by the expiration of the time for seeking such review, has one year from that date in which to seek federal habeas relief. Where, as here, the petitioner's conviction became final, and his state habeas petitions were rejected, before AEDPA's effective date, he had until April 23, 1997 in which to file his habeas petition. Because Henderson did not do so until November 30, 1997, Magistrate Judge Sanderson recommends dismissing the petition based on AEDPA's one-year limitations period.

Henderson argues that the court should excuse his untimely petition on the ground that another inmate, Joseph Goodson ("Goodson"), agreed to file the petition for him and fraudulently represented that he had done so.

Petitioner Bradley Scott Taylor ("Taylor") collaterally attacks his state court conviction for robbery. Following a plea of no contest, the court sentenced him to a period of imprisonment of seven years. Taylor did not take a direct appeal from his conviction and sentence, and it became final on March 30, 1995. Because his conviction became final before AEDPA's effective date, the one-year period did not commence until April 24, 1996. The limitations period had almost completely expired when, on April 21, 1997, Taylor filed his first state habeas petition. Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Accordingly, the one-year period stopped until the Texas Court of Criminal Appeals denied his habeas petition. According to Taylor, this occurred either on June 2, 1997 or July 9, 1997. The AEDPA clock then restarted, and expired prior to August 18, 1997, when he signed the instant habeas petition. Magistrate Judge Boyle recommends dismissing the petition as time-barred.

Taylor argues that the court should excuse him from the limitations bar because he did not have professional legal assistance, "did

not know what to do," and had the assistance of another inmate until the inmate left the unit where he is detained.

## II

### A

AEDPA imposes a time limit for filing habeas petitions. Section 2244(d) provides:

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Several circuits, including the Fifth Circuit, have held that prisoners attacking convictions or sentences that became final before the effective date of AEDPA have one year from April 24, 1996 to file for habeas relief. *See, e.g., United States v. Flores*, 135 F.3d 1000, 1006 (5th Cir.1998) (§ 2255 case). As noted, this court reached a similar result in a § 2254 habeas case in *Moraido*. Neither Henderson nor Taylor contends that any of the provisos in § 2244(d)(1)(B)–(D) excuses

him from the one-year time bar. Each asserts that there are compelling reasons why the bar of § 2244(d)(1)(A) should not be applied.

## B

Few courts have addressed whether the one-year limit is subject to equitable tolling or is instead an unflinching limit on federal court jurisdiction. Only one circuit court—the Ninth—has decided the question. It held in *Calderon v. United States Dist. Ct.*, 128 F.3d 1283, 1289 (9th Cir.1997) (on petition for writ of mandamus), *cert. denied,* —— U.S. ——, 118 S.Ct. 899, 139 L.Ed.2d 884, *and* —— U.S. ——, 118 S.Ct. 1389, 140 L.Ed.2d 648 (1998)), that the one-year limit is a statute of limitations that is subject to equitable tolling, not a jurisdictional bar. In rejecting the warden's assertion that allowing the one-year limit to be tolled would undermine the statute's purpose, the court emphasized the limited availability of equitable tolling. *Id.* at 1288. It held that "extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Id.* (citing *Alvarez–Machain v. United States,* 107 F.3d 696, 701 (9th Cir.1997)). The panel expressed confidence that "district judges will take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions when this high hurdle is surmounted." *Id.* at 1289. The court declined to enter a writ of mandamus overturning the district court's decision to grant the prisoner additional time to file his petition. *Id.* The district court had found that the prisoner's counsel had diligently pursued the preparation of the petition but withdrew after accepting employment in another state. Much of the work product that the attorney left behind was not usable by replacement counsel. These events were beyond the prisoner's control, and were extraordinary circumstances that justified tolling the limitations period. *Id.*

Since *Calderon* was decided, a few district courts have addressed the issue. Without authority from its own circuit court, the Western District of Missouri adopted the Ninth Circuit's holding in *Calderon* that § 2244(d)(1) is a statute of limitations, not a jurisdictional limitation. *See Parker v. Bowersox,* 975 F.Supp. 1251, 1252 (W.D.Mo.1997). The issue that *Parker* discussed at greater length was whether the prison mailbox rule applied. The court held that it did, and concluded that the § 2244(d)(1) time-period was tolled when the petitioner placed his petition in the prison mail system five days before the limitations period expired. *Id.* at 1253–54.*

The Northern District of California followed *Calderon* in *Bolds v. Newland,* 1997 WL 732529, at * 1–*2 (N.D.Cal. Nov.12, 1997). *Bolds* held that tolling was not available to a petitioner who asserted that his lack of proper notice and lack of legal assistance justified tolling the limitations period.

The Central District of California applied the *Calderon* standard to a 28 U.S.C. § 2255 habeas petition in *United States v. Van Poyck,* 980 F.Supp. 1108, 1109 (C.D.Cal. 1997). *Van Poyck* noted that courts have held that tolling is proper "when external forces, rather than plaintiff's lack of diligence, account for the failure of a complainant or movant to file a timely claim." *Id.* at 1110–11 (citing cases). The court concluded that the petitioner's difficulties obtaining transcripts, and the occurrence of four prison lockdowns, of several days duration, within a two-month period, that virtually eliminated his access to the law library, were not extraordinary circumstances. *Id.* The prisoner had failed to explain why the transcripts were necessary to prepare his petition, and

---

* It is arguable that it was unnecessary for the *Parker* court to decide the case on the basis of equitable tolling. Under the prison mailbox rule, a notice of appeal is deemed filed when the notice is delivered to prison authorities for forwarding to the district court. *Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). Applying this rule to the petitioner's case in *Parker,* his habeas petition could have

been deemed filed when "he attempted to mail his petition to the Clerk of Court on April 18, 1997." *Parker,* 975 F.Supp. at 1251. Because, under the prison mailbox rule, the prisoner filed his petition before the AEDPA deadline, the *Parker* court could have found that his petition was timely filed without holding that the AEDPA limitations period was equitably tolled.

had not justified why a few security lock-downs, *during the two-month period*, made it impossible for him to file his petition on time. *Id.* at 1111. Focusing on the petitioner's control over the circumstances alleged to have prevented timely filing, the court held that, "[m]ost importantly, Defendant has not argued that the circumstances that purportedly support his Motion were caused by events over which he had no control." *Id.*

## III

### A

■■■ This court joins *Calderon,* and the district courts that follow it, and holds that § 2244(d)(1) is a statute of limitations that is subject to equitable tolling, not a jurisdictional bar. The court also adopts *Calderon's* conclusion that such tolling is available only when the petitioner meets the high hurdle of showing (1) extraordinary circumstances (2) beyond his control (3) that made it impossible to file his petition on time.

■■■ Many excuses presented in future cases will be easily identifiable as far from extraordinary, well-within the prisoner's control, and insufficient to have rendered it impossible for the prisoner to have filed a timely petition. Nevertheless, because the standard is expressed in terms intended to be applied generally, it is advisable to augment the rule with more specific principles that guide its implementation. Otherwise, court decisions that resolve AEDPA tolling questions may amount to nothing more than a patchwork of individual rulings that succeeding courts must attempt to follow or distinguish on their facts. The court therefore adopts the following nonexclusive factors to assist in deciding whether a prisoner has met the high tolling standard. Although not all factors will apply in a given case, other considerations may appropriately be considered, and each factor need not carry equal weight, these considerations will enable the court to address the tolling issue using a framework that clarifies the more abstract aspects of the general rule. These factors are as follows:

1. whether the circumstance on which the prisoner relies is substantially similar to one of the grounds that Congress provided in § 2244(d)(1)(B)–(D) would delay commencement of the limitations period;

2. whether the circumstance is substantially similar to one that the Supreme Court or the Fifth Circuit has determined would toll a limitations period imposed by a similar type of statute;

3. was the circumstance extraordinary when measured according to those encountered by a typical prisoner who prosecutes *pro se* a federal habeas petition;

4. was the circumstance beyond the prisoner's control when measured according to the degree of control available to a typical prisoner who prosecutes *pro se* a federal habeas petition;

5. if the prisoner has established an extraordinary cause that was beyond his control, for what portion of the one-year period was the insuperable impediment in effect, and did the circumstance render it impossible for the prisoner to file a timely petition before the impediment began or after it ended;

6. if the prisoner was represented by counsel in the federal habeas process, whether counsel rendered ineffective assistance that was both constitutionally deficient and actually prejudiced the prisoner's filing of a timely petition;

7. whether the court, by approving the ground on which the prisoner relies, would materially ease the high standard necessary to toll AEDPA's limitation period, thereby undermining Congress' expressed desire to accelerate the federal habeas process; and

8. whether, if the period is not tolled on the ground on which the prisoner relies, the effect will be unconstitutionally to suspend the writ of habeas corpus, in violation of Article I, § 9, cl. 2 of the Constitution.

### B

The court now considers *de novo* whether the instant petitions must be dismissed as time-barred.

1

■ Henderson alleges that Goodson, a fellow inmate who represented that he was a lawyer and a former law clerk to a United States District Judge, assisted him in preparing and filing his petition. Henderson contends that Goodson agreed to prepare the petition and informed him that he filed it on August 26, 1996. When Henderson became concerned that he had not received any pleadings in his case, he talked with Goodson, who urged him not to contact the court because of the sensitive nature of the proceedings and the potential that he would "screw everything up." Henderson finally wrote to the court clerk on July 23, 1997, almost 11 months after Goodson had supposedly filed the petition. When the clerk informed Henderson that no petition had been filed, he confronted Goodson, who denied that he had not filed the petition and produced a copy of a petition that appeared to bear a legitimate file stamp from this court. Henderson in turn asked the clerk's office whether a mistake had occurred, and learned that the seal was not the district clerk's and that no petition had been filed. Henderson concluded that Goodson had created the stamp to hide the truth.

The court finds that Henderson has not met the required showing of an extraordinary circumstance, beyond his control, that made it impossible to file his petition on time. There is nothing in the record to suggest that Henderson's circumstances are materially different from those encountered by a typical prisoner who prosecutes *pro se* a federal habeas petition. In characteristic fashion, Henderson decided to apply for habeas relief and then sought the assistance of another inmate in doing so.

Even if he had shown such a circumstance, the elements of the high standard are conjunctive. He must still establish that the circumstances were beyond his control. When measured according to the degree of control available to a typical prisoner who prosecutes *pro se* a federal habeas petition, he has failed to meet this requirement.

Henderson was always in charge of his habeas petition. He chose voluntarily to rely on the assistance of Goodson, a fellow inmate. The inmate's conduct did not render it impossible for Henderson to file a timely petition because Henderson could have filed the petition himself at any time. He acknowledges that he was aware that he should have received some documentation from the court once the petition was filed. The record reflects that he was familiar with basic court procedures because of his experience having filed two state habeas petitions. Accepting as true that Goodson fraudulently urged Henderson not to contact the court, he nevertheless waited almost 11 months before advising the clerk of his concerns. Under these facts, it was possible for Henderson to file his petition on time.

Neither do the other nonexclusive factors persuade the court that tolling is warranted. It is apparent that Henderson is not relying on a circumstance that is substantially similar to one of the grounds that Congress provided in § 2244(d)(1)(B)–(D) would delay commencement of the limitations period. Neither the Supreme Court nor the Fifth Circuit has determined that circumstances similar to the ones on which Henderson relies would toll a limitations period imposed by a similar type of statute. Factors five and six are inapposite because Henderson has not shown an extraordinary cause that was beyond his control, and he was not represented by counsel in the federal habeas process.

Moreover, if this court were to approve the ground on which Henderson relies, it would materially ease the high standard necessary to toll AEDPA's limitation period, thereby undermining Congress' expressed desire to accelerate the federal habeas process. It is common for prisoners to count on other inmates for assistance in filing lawsuits or seeking habeas relief. Both Henderson and Taylor, the petitioners in these cases, had such help. Inmates who assist other prisoners with legal matters are not subject to the ethical and fiduciary obligations of lawyers. If their miscreant, inept, or negligent conduct were deemed sufficient of itself to toll the AEDPA limitations period, the time-bar would be rendered virtually meaningless. This factor supports rejecting Henderson's tolling argument.

There is no suggestion in the record that if the period is not tolled on the basis on which Henderson relies, the effect will be unconstitutionally to suspend the writ of habeas corpus.

Accordingly, the court finds that Henderson has failed to demonstrate an extraordinary circumstance, beyond his control, that made it impossible to file his petition on time.

2

██ Taylor's case for tolling the limitations period is flimsier still. The only reasons that Taylor proffers for his delay are that he did not have professional legal assistance, "did not know what to do," and had another inmate help him until the inmate left the unit. These grounds are far from the extraordinary circumstances required to toll the statute. In fact, they are archetypal of those that could be relied on by the typical prisoner who prosecutes *pro se* a federal habeas petition. Taylor has not shown that they amounted to (1) extraordinary circumstances (2) beyond his control (3) that made it impossible to file his petition on time. After considering the other nonexclusive factors, the court discerns no reason to conclude that the period should be tolled. Taylor's petition must also be dismissed as barred by limitations.

\*     \*     \*     \*     \*     \*

Accordingly, following independent review of the pleadings, files, and records in these cases, and the findings, conclusions, and recommendations of the magistrate judges, the court concludes that the recommendations are correct, and adopts them for the reasons set forth in this opinion. The court has filed judgments today dismissing these petitions as time-barred.

**SO ORDERED.**